FILED
United States Court of Appeals
Tenth Circuit

December 16, 2010

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

CHRISTOPHER ALAN EDWARDS,

     Defendant - Appellant.

No. 00-1007
(D. Ct. No. 1:99-CR-00213-WYD-1)

---

# ORDER

---

Before **MURPHY**, **HOLLOWAY**, and **EBEL**, Circuit Judges.

---

This matter is before the court on non-party Renee Dittrich's *Petition To Redact Personally Identifying Information From Previously Published Opinion*. In her motion, Ms. Dittrich asks the court to withdraw the opinion filed in this matter originally on March 9, 2001, and to replace it with a redacted version which deletes her name. She also asks for other related relief.

Upon consideration, the motion is granted in part. The clerk is directed to withdraw the prior opinion. A new redaction version is attached to this order and shall issue nunc pro tunc to the original filing date. In addition, to every extent

possible the clerk is directed to notify the court's regular electronic publishers of the new opinion.

Entered for the Court,

ELISABETH A. SHUMAKER
Clerk of Court

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 9, 2001**

**Patrick Fisher**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.                                                No. 00-1007

CHRISTOPHER ALAN EDWARDS,

       Defendant-Appellant.

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 99-CR-213-D)**

---

Howard A. Pincus, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the briefs) of Denver, Colorado, for Defendant-Appellant.

Andrew A. Vogt, Assistant United States Attorney (Thomas L. Strickland, United States Attorney, District of Colorado, with him on the brief) of Denver, Colorado, for Plaintiff-Appellee.

---

Before **EBEL**, **HOLLOWAY** and **MURPHY**[*], Circuit Judges.

---

**EBEL**, Circuit Judge.

---

[*] This opinion has been amended to redact any reference to non-party Renee Dittrich.

Defendant-Appellant Christopher Edwards ("Edwards") appeals his conviction and sentence for armed robbery in violation of 18 U.S.C. §2113(a), (d).  The district court denied Edwards' motion to suppress certain evidence obtained by the police immediately following his arrest on the grounds that Edwards' warrantless arrest was supported by probable cause and the subsequent search of bags stored in his companion's rental vehicle was a search incident to that arrest.  Edwards was subsequently convicted and, at sentencing, received a two-point enhancement for obstruction of justice based upon his testimony at trial.  For the reasons set forth herein, we find that the search of the rental car was not a valid search incident to arrest, and cannot be justified either as an inventory search or as a search supported by probable cause.   We therefore REVERSE Edwards' conviction on the ground that the district court incorrectly denied his motion to suppress and REMAND this case to the district court.[1]

## I. BACKGROUND

At about 3:00 p.m. on June 4, 1999, the West Hollywood, California, police learned that a dye pack had gone off inside the City National Bank[2] when a bank

---

[1]  Because we hold that Edwards' conviction must be reversed, we need not decide whether the district court's decision to enhance Edwards' sentence for obstruction of justice was clearly erroneous.

[2]  Many banks use dye packs during robberies to aid in catching the criminal. Dye packs are disguised as ordinary, unused packs of currency. A

(continued...)

employee tripped the bank's silent alarm.  When the police arrived, they found

Edwards and his girlfriend standing outside the bank with a parking lot attendant.

An open camera bag was on the ground between them, with about $2000 in plain

view.  Red smoke was coming from the bag, the inside of the bag was covered

with red dye, and some of the money appeared to be charred.  The woman had red

stains on her hands, face, and dress.

Deputies William Lynch and Timothy Fives frisked Edwards and the

woman and did not find any weapons, but discovered a roll of United States

currency in Edwards' pocket.  Deputy Lynch then read Edwards his

Miranda rights, see Miranda v. Arizona, 384 U.S. 436 (1966), and Edwards

agreed to talk with police.  Deputy Fives questioned Edwards about the money

and received two different stories: first, that it was profits from his dog-biscuit

bakery in Boulder, and second, that it was the proceeds from selling three oil

paintings in California.  Deputy Fives asked for additional information about the

paintings (for example, the name of the artist), and Edwards had "no good

answers."  Because Edwards could not supply details, Deputy Fives did not

believe his stories.  Deputy Fives responded by handcuffing Edwards and placing

---

[2](...continued)
portion of the bills in the middle of the pack is hollowed out for a small,
explosive device.  Shortly after the dye pack passes through the magnetic field at
the bank's doors, it explodes, releasing red smoke, tear gas, and red dye.  Dye
packs are not available to the public.

him in the back seat of a patrol car.  The woman was also handcuffed and placed in the back of another patrol car.

While Edwards was being held in the back of the police car, but before he was transported to the police station, the police discovered that the City National Bank had not been robbed.  The exact timing of this discovery is disputed, and it seems likely that different officers learned this at different times.  During the time period when it is unclear exactly who knew the City National Bank had not been robbed, the police decided to search the rental car being used by Edwards and the woman.[3]  The car was rented in the woman's name, and Edwards was not listed on the rental agreement as an authorized driver of the vehicle.  The rental car was parked in the City National Bank parking lot, roughly 50 feet from the bank entrance and 100 to 150 feet from where the police were questioning Edwards and his girlfriend.  The bank's parking lot attendant, Ernesto Lopez, pointed out the car as belonging to the couple.  In their search of the rental car, the police found a clothing bag in the trunk of the car that was later identified as belonging to Edwards.  The bag contained plastic bags full of dye-covered currency which was bundled together with Federal Reserve wrappers from the Bank in Boulder.  Another bag belonging to Edwards, also seized from the trunk, contained a red-and-blue mask.  After the police searched the car, they decided to impound it so

---

[3]  The officer who conducted the search, Deputy Gilinets, testified that he knew there had been no robbery when he searched the rental car.

that the Federal Bureau of Investigation ("FBI") could later search it again.  The next day, after the car was impounded, the police found a sweatshirt and black shoes in the car; it is unclear exactly where in the car, or in Edwards' luggage, those items were found.  The officer who conducted the search merely stated: "I went back over and removed everything from the car and just to look for if there was any additional evidence we had missed.  And I recovered – I booked in evidence a pair of shoes and a shirt."

Deputy Fives testified that he knew there had been no robbery of the City National Bank when he took Edwards to the station for booking.  Edwards was thus booked for "reasonable cause 211," an armed robbery charge used when the police have probable cause to believe that a robbery has taken place, but do not yet know the victim.[4]  When they arrived at the station, Deputy Fives counted the money he had discovered on Edwards when patting him down at the scene and noticed that it was stained red.  The stains resembled those caused by dye packs, which are used by banks to mark stolen money.  Later, an FBI agent noticed that some of the currency retrieved from Edwards' bags in the rental car had a wrapper from the Bank in Boulder.  The FBI then contacted its Denver office and learned that the Bank in Boulder had been robbed the previous week, on May 28, 1999.  The mask and sweatshirt found in the rental car matched the description of

---

[4] "Reasonable cause" is generally considered synonymous with "probable cause" in California. See Kobzoff v. Los Angeles County Harbor/UCLA Med. Ctr., 968 P.2d 514, 518 (Cal. 1998).

items worn by the perpetrator of that crime.  In addition, Edwards' physical description matched at least some of the physical descriptors provided by eye witnesses to the Bank in Boulder robbery.  Based on this information, a magistrate judge issued a warrant on June 7, 1999, for Edwards' arrest on charges of armed robbery.

Later that day, the FBI took Edwards to the federal courthouse for his initial appearance on these charges.  In the car, Edwards volunteered, "[i]f you would have asked me [where the money came from], I would have told you I found it."  Because Edwards had invoked his right to counsel, the agents did not follow up on this statement.

Edwards was indicted for the robbery of the Bank in Boulder under 18 U.S.C. §2113(a), (d) on June 24, 1999.  Edwards moved to suppress the evidence discovered when the police searched his bag and the statements he made to the police at the scene of his arrest, arguing that the police had lacked probable cause to arrest him.  After hearing the testimony of several officers, the district court denied Edwards' motion to suppress, ruling that the officers had probable cause to arrest him even after they discovered that the City National Bank had not been robbed.  The district court further held that, because the arrest was valid, the police's search of the rental car, and the bags contained within it, was a search incident to arrest and that Edwards' statements to the police were not "fruit of the poisonous tree."

At trial, the government introduced evidence about the incident at City National Bank that largely mirrored that presented against the motion to suppress. It also presented eyewitnesses to the Boulder robbery and a surveillance video. The Boulder robbery took place at about 11:35 a.m. on May 28, 1999.  The tellers, a customer, and a passer-by on the street identified the mask and sweatshirt found by the police in Edwards' luggage as that worn by the robber.[5] They also gave a generic description of the robber as a white male in his late 20s and roughly 5'10" tall, with a medium-pitched voice, medium build and sandy-brown hair.  They could not identify Edwards.[6]  The woman, who had since ceased her relationship with Edwards, also testified.  She stated that Edwards bought her a ticket to California the day after the Bank in Boulder robbery and that, once she arrived in California, Edwards gave her several packets of money. She also identified the sweatshirt seized from the bags in the rental car, which Edwards denied owning, as belonging to Edwards.

Edwards' defense largely consisted of alibis for his whereabouts on the day of the robbery.  Edwards testified that he picked up some glasses shortly after 11:00 a.m.  At approximately 11:30 a.m., he went to a restaurant and stayed for

---

[5]  The defense continued to object to the admission of this evidence on the same grounds it had argued at the suppression hearing.

[6]  Various witnesses also placed Edwards in a restaurant and a sunglasses store near the Bank in Boulder around the time of the crime, but could not pinpoint the exact times.

about twenty minutes.  Around 11:50 a.m., he went to the sunglasses store and spent nearly $140 in cash on a pair of Ray Ban sunglasses.  Edwards testified that he then bought a shirt for nearly $150 and returned to the restaurant around 1:00 p.m.  Around 2:00 p.m., he decided to go jogging through the Pearl Street mall area.  As he passed a small wooded area with some stairs (about six or seven blocks from the bank), Edwards stated that he saw a $10 or $20 bill on the ground.  He picked it up and saw a bag a few feet away. The bag was covered in something red and contained a garment and a lot of red-stained money.  He picked up the bag and ran home.  Edwards then left for California, as he had apparently been planning to do for some time. Once there, Edwards testified, he sold some paintings and then met the woman so they could travel together.

The jury convicted Edwards of armed bank robbery.  The government moved to enhance his sentence for obstructing justice by giving false testimony. Edwards objected to this enhancement. The district court applied the enhancement solely on the basis of Edwards' testimony at trial.  Edwards was sentenced to 102 months in prison.

## II.  DISCUSSION

The district court had jurisdiction over the criminal case pursuant to 18 U.S.C. §3231.  We have jurisdiction under 28 U.S.C. §1291.

"In reviewing the denial of a motion to suppress, we must accept the district court's factual findings unless they are clearly erroneous and we view the evidence in the light most favorable to the prevailing party. However, we review de novo the legal issue of whether the police had probable cause to arrest the defendant." United States v. Springfield, 196 F.3d 1180, 1183 (10th Cir. 1999) (citations omitted).  The ultimate determination of the reasonableness of a warrantless search or seizure under the Fourth Amendment is a determination of law that we review de novo.  See United States v. Pena, 920 F.2d 1509, 1513-14 (10th Cir. 1990).

### A.  Probable Cause for the Arrest

"To be lawful, a warrantless arrest must be supported by probable cause to arrest."  United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998). Edwards argues that the police did not have probable cause to arrest him, and therefore that the evidence discovered in the rental car and his statements to the police should have been suppressed.

The district court found, and the government does not dispute, that Deputy Fives arrested Edwards when he handcuffed Edwards and placed him in the back

of the police car.  An arrest occurs when the police use a "show of official authority such that a reasonable person would have believed he was not free to leave." United States v. Ritchie, 35 F.3d 1477, 1481 (10th Cir. 1994) (citations and quotations omitted). After the police arrived at City National Bank, Edwards was questioned for several minutes, frisked, handcuffed and placed in the back of a police car.[7]  Under these circumstances, Edwards could not have believed he was free to leave.  Therefore, we agree with the district court that the arrest happened at approximately 3:15 p.m. on June 4, 1999, at the point when the police handcuffed Edwards and placed him in the back of a police vehicle.

The police arrested Edwards without a warrant.  The question, then, is whether the police had probable cause to arrest Edwards when they placed him in the back of the police vehicle.

> The constitutional validity of a warrantless arrest depends on whether the arresting officer had probable cause. Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Although it is not necessary that the officer possess knowledge of facts sufficient to establish guilt, mere suspicion is insufficient to establish probable cause. . . . [P]robable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer.

---

[7]  Moreover, the booking slip indicated that the police arrested Edwards at 3:15 p.m., which meant that the police believed Edwards was arrested at the scene at approximately the time that he was placed in the car.

United States v. Maher, 919 F.2d 1482, 1485-86 (10th Cir. 1990) (citations omitted); see also United States v. Guerrero-Hernandez, 95 F.3d 983, 986 (10th Cir. 1996).

The evidence shows that Deputy Fives was not aware when he arrested Edwards that City National Bank had not been robbed.  Indeed, the evidence shows that Deputy Fives fully believed at the time of arrest that City National Bank had been robbed based upon the dye-stained money he could see in the camera bag and the alarm set off by a bank employee.  In addition, Edwards had been identified by bank personnel as the person who caused them to call the police and both Edwards and the woman were covered with red dye from what appeared to be an exploded dye-pack.  Based upon these facts, Deputy Fives had probable cause to believe that Edwards had committed bank robbery when he placed Edwards in the back of the police vehicle.

Shortly after the arrest but before they searched the rental vehicle, however, the police discovered that the City National Bank had not been robbed. If the police learn information that destroys their probable cause to arrest a defendant, the arrest may become illegal.  Cf. United States v. Watson, 423 U.S. 411, 449 (1976) (Marshall, J., dissenting) ("[P]robable cause to arrest, once formed, will continue to exist for the indefinite future, at least if no intervening exculpatory facts come to light.").  The question, then, is whether the police still had probable cause to keep Edwards under arrest after learning that the bank had

- 11 -

not been robbed but before discovering the other evidence in the rental car. We find that they did. Dye-packs are not available to the public, and are primarily used to mark money stolen from banks. Edwards was found outside a bank carrying a bag full of dye-stained money and offered only implausible, inconsistent explanations of how he came into possession of the money. Under these circumstances, and despite knowing that the City National Bank had not been robbed, the police had probable cause to believe that a crime – whether bank robbery or possession of stolen property – had occurred. Cf. Maher, 919 F.2d at 1486 (finding probable cause to arrest the defendant where the defendant was driving an unregistered trailer with stolen plates, could not produce ownership papers, and was unable to provide the name or address of the person from whom he had allegedly purchased the trailer); United States v. Smith, 833 F.2d 213, 218 (10th Cir. 1987) ("Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which an inference may reasonably be drawn that the person knew the property had been stolen.") The fact that the police did not, at the time of arrest, know exactly what crime had occurred is not relevant, so long as they had probable cause to believe "an offense" had been committed. See Maher, 919 F.2d at 1485 (emphasis added); United States v. Henderson, 464 F.2d 260, 263 (2d Cir. 1972) ("We recognize that even though Officer Keane had reasonable cause to believe that a serious crime had been committed, he could not at the crucial moment determine precisely what crime

- 12 -

that was – whether, for example, it was robbery, armed robbery, or burglary. But common sense and authority suggest that this inability should not invalidate an otherwise proper arrest."); see also Model Code of Pre-Arraignment Procedure § 120.1(2) (Proposed Official Draft 1975) ("An arrest shall not be deemed to have been made on insufficient cause hereunder solely on the ground that the officer is unable to determine the particular crime which may have been committed.").

For the foregoing reasons, we find that the warrantless arrest of Edwards was supported by probable cause and was therefore valid.

## B. Search of the Car

The district court found that, because the arrest of Edwards was supported by probable cause, the warrantless search of the rental car was a valid search incident to arrest. This search turned up the important evidence against Edwards: more dye-stained money, Federal Reserve wrappers linking the money to the Boulder robbery, and clothing worn by the robber. This was the only evidence directly linking Edwards to the Bank in Boulder robbery. We find that the district court erred in holding that this was a valid search incident to arrest. We note, however, that the government advanced two alternate theories below on which it believed the district court could have denied Edwards' motion to suppress: (1) that it was an inventory search, and (2) that the search was supported by probable

cause.[8]  Because we may affirm the district court "on any grounds for which there

is a record sufficient to permit conclusions of law, even grounds not relied upon

by the district court," United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir.

1994) (quotations omitted), we address both alternative arguments presented by

the government on their merits.  In so doing, however, we find that this search

was not an inventory search, nor was it supported by probable cause.  We

therefore reverse the district court's decision and hold that the evidence seized

from the rental car should have been suppressed.


### 1.   Standing to Challenge the Search

Edwards does not have standing to challenge the search of the car itself

because it was rented in the woman's name and he was not an authorized driver of

the vehicle.  See United States v. Shareef, 100 F.3d 1491, 1499-500 (10th Cir.

1996); United States v. Obregon, 748 F.2d 1371, 1374-75 (10th Cir. 1984)

(holding that defendant driver had no reasonable expectation of privacy in a rental

car where the rental agreement demonstrated that the car had been rented by a

third party and there was no evidence that the rental company had permitted

---

[8]  The government has not argued, either to the district court or on appeal, that the evidence seized from the rental car used by the woman and Edwards would inevitably have been discovered by the police following their decision to impound the vehicle.  Because the government has never argued this alternative theory as justification for the district court's denial of Edwards' motion to suppress, we will not consider it on appeal.  See Walker v. Mather, 959 F.2d 894, 896 (10th Cir. 1992).

defendant lawfully to drive the car). However, the police did not just search the car, they searched bags found in the trunk of the car, several of which belonged to Edwards. We must therefore determine whether Edwards has standing to challenge the search of his bags, despite his lack of standing to challenge the search of the rental car itself.

We answer this question by looking to general Fourth Amendment analysis previously enunciated by this court: "Because the standing issue remains 'invariably intertwined' with substantive Fourth Amendment privacy rights analysis, logic dictates that we 'determine "whether the challenged search or seizure violated the Fourth Amendment rights of the criminal defendant who seeks to exclude the evidence."'" United States v. Martinez, 983 F.2d 968, 972 (10th Cir. 1992) (quoting United States v. Arango, 912 F.2d 441, 445 (10th Cir. 1990) (quoting Rakas v. Illinois, 439 U.S. 128, 139-40 (1978))). In deciding whether a search has infringed upon a defendant's protected constitutional rights, "we examine two primary factors: 'whether the defendant manifested a subjective expectation of privacy in the area searched and whether society would recognize that expectation as objectively reasonable.'" Id. (quoting Arango, 912 F.2d at 445).

Edwards was not the registered driver of the rental car and "passengers often have little or no privacy rights in a motor vehicle." See id. at 972-73. Relying upon that principle, we held in Martinez, 983 F.2d at 972-73, that neither

- 15 -

a non-owner driver nor a non-owner passenger had standing to challenge the police's search of the trunk of the car in which they were traveling. There we squarely rejected the defendants' argument that the mere existence of their stored luggage in the trunk of the car was sufficient to convey a reasonable expectation of privacy over the trunk itself. See id. at 973. However, although we found storage of luggage within the car's trunk insufficient to confer standing over the entire trunk, this court intimated that the defendants might have had standing to challenge a search of the luggage being stored there. See id. ("[G]iven the uncertainty over the ownership of the vehicle, she may have possessed a reasonable expectation of privacy over the contents of the luggage, [but] not over the trunk where the luggage was located."); see also Arkansas v. Sanders, 442 U.S. 753, 761 n.8 (1979) (noting that "there is no question of [the defendant's] standing to challenge the search" where he asserted ownership over the luggage in question), abrogated on other grounds by California v. Acevedo, 500 U.S. 565, 579 (1991); United States v. Buchner, 7 F.3d 1149, 1154 (5th Cir. 1993) ("The owner of a suitcase located in another's car may have a legitimate expectation of privacy with respect to the contents of his suitcase.").

Here, Edwards' bags were closed and stored in the trunk of the rental car.[9] They contained items such as clothing and toiletries in addition to the contraband seized by the police, and were being used to transport Edwards' personal belongings while traveling.  Based upon these facts, we find that Edwards clearly manifested a subjective expectation of privacy in the bags and that his expectation was one that society has recognized as reasonable.  Accord Sanders, 442 U.S. at 761 n.8; Buchner, 7 F.3d at 1154.  We therefore find that Edwards has standing to challenge the search of his personal luggage contained within the trunk of the rental vehicle.

---

[9] We acknowledge that there is some confusion regarding the state of the rental car's trunk when the police arrived, i.e., whether it was open or closed, and that the answer to that question might impact our analysis of Edwards' reasonable expectation of privacy in regard to items stored in the trunk.  There was no factual finding by the district court on this issue.  Deputy Fives testified at the suppression hearing that, when he arrived at the scene, he "was pretty sure [he] saw some few wisps of red smoke still drifting around the car, and the trunk of that car was open."  Deputy Fives was not, however, the first officer to arrive on the scene.  In addition, Deputy Fives testified that he "remember[ed] seeing the trunk of a car opened," which implies that he was already on the scene when the trunk of the rental car was actually opened.  Finally, the government has not argued that the trunk of the rental vehicle was open when the officers arrived at the scene, such that Edwards' reasonable expectation of privacy in the items stored in the trunk would be diminished.  For these reasons, we read the record to indicate that the trunk of the rental vehicle was closed when the officers arrived on the scene.

2. <u>Search Incident to Arrest</u>

It is well established that warrantless searches violate the Fourth

Amendment unless they fall within a specific exception to the warrant

requirement. <u>See</u> <u>United States v. Karo</u>, 468 U.S. 705, 717 (1984). "[T]he

government has the burden of proving that an exception to the warrant

requirement applies." <u>United States v. Maestas</u>, 2 F.3d 1485, 1491 (10th Cir.

1993). One such exception is a search incident to arrest: "[A] lawful custodial

arrest creates a situation which justifies the contemporaneous search without a

warrant of the person arrested and of the immediately surrounding area." <u>New</u>

<u>York v. Belton</u>, 453 U.S. 454, 457 (1981).

"[T]he scope of a search [incident to arrest] must be strictly tied to and

justified by the circumstances which rendered its initiation permissible." <u>Chimel</u>

<u>v. California</u>, 395 U.S. 752, 762 (1969) (citations and quotations omitted).

Because searches incident to arrest are meant to discover hidden weapons and to

prevent the suspect from destroying evidence, <u>see</u> <u>id</u> at 763, a search incident to

arrest may extend only to the area within the suspect's "immediate control," as

that is the only area from which the suspect could draw a weapon or damage

evidence.  <u>See</u> <u>id.</u>; <u>United States v. Franco</u>, 981 F.2d 470, 472 (10th Cir. 1992)

("The scope of the warrantless search under this exception is restricted to the

person of the arrestee and to any area into which the arrestee could reach.")

Thus, if the police arrest the occupant of a car they may also search the passenger

compartment of the vehicle, but they may not search other areas that are outside the suspect's immediate control or "grab" space.  See Belton, 452 U.S. at 460; Chimel, 395 U.S. at 763; Franco, 981 F.2d at 472.

The justification for allowing searches incident to arrest also places a temporal restriction upon the police's conduct.  As this court stated in United States v. Lugo, 978 F.2d 631, 635 (10th Cir. 1992), once the immediate rationale for conducting a search incident to arrest has passed, the police may not then engage in a search absent probable cause to do so.  See id. ("[W]hen the search of Lugo's truck began, Lugo was no longer at the scene. He was handcuffed and sitting in the back seat of a patrol car proceeding toward Green River. Once Lugo had been taken from the scene, there was obviously no threat that he might reach in his vehicle and grab a weapon or destroy evidence. Thus, the rationale for a search incident to arrest had evaporated.").  Lugo thus involved a much different set of facts than those presented in United States v. Cotton, 751 F.2d 1146, 1149 (10th Cir. 1985), where we upheld as a search incident to arrest a search of the passenger compartment of the vehicle which was conducted after the defendant was removed from the compartment and handcuffed, but while he was still standing next to the vehicle and conceivably could have accessed a weapon stored within the vehicle.

In this case, the police searched both the rental car and the bags located within its trunk.  Edwards was not arrested in or near the car, but 100-150 feet

- 19 -

away from the car, and he was handcuffed in the back of a police vehicle at the time of the search.  There was thus no reason to fear that Edwards could retrieve a weapon or destroy evidence in the car, as nothing within the car was in Edwards' "grab space" or immediate control. Accord Chimel, 395 U.S. at 763 (stating that the police may search the immediate area around an arrested suspect but that there is "no . . . justification . . . for routinely searching any room other than that in which an arrest occurs"). And unlike in Franco, 981 F.2d at 473, where the defendant demonstrated control over his vehicle immediately prior to and at the time of arrest, there is no evidence whatsoever that Edwards had any control over the rental car immediately preceding or at the time of his arrest.  Because Edwards was incapacitated with handcuffs and sitting in the back of a police car approximately 100-150 feet away from the rental car, any justification to conduct a search incident to arrest had dissipated.  Just as this court found on similar relevant facts in Lugo, the rationale for conducting a search incident to arrest had evaporated prior to the police's search of the rental vehicle.

Under these circumstances, we find that the search of the rental car was not a valid search incident to arrest.

- 20 -

### 3. Inventory Search

The government argued below, and implies in its brief on appeal, that the search of the rental car could also be justified as an inventory search. We disagree.

An inventory search conducted as part of regular procedures, and for administrative rather than investigatory purposes, does not require a warrant. See United States v. Haro-Salcedo, 107 F.3d 769, 772-73 (10th Cir. 1997). The officers testified that it was standard procedure for the L.A. County police to impound a vehicle used in a crime, and to conduct an inventory search of its contents. To be justified as an inventory search, however, the search cannot be investigatory in nature but must instead be used only as a tool to record the defendant's belongings to protect the police from potential liability. See South Dakota v. Opperman, 428 U.S. 364, 376 (1976) (upholding inventory search where "there is no suggestion whatever that this standard procedure . . . was a pretext concealing an investigatory police motive"); Haro-Salcedo, 107 F.3d at 772-73 ("An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence . . . .").

In this case, it is clear that the search of the rental vehicle was conducted for investigatory, rather than administrative, purposes. Deputy Gilinets testified that he "was assigned to the suspects' vehicle to search for any additional evidence or anything that would indicate this is their vehicle and indicate

anything that would suffice that a crime occurred." He also admitted on cross-examination that he was "searching for evidence of the crime." In addition, the decision to impound the car was not made until after the search revealed incriminating evidence against Edwards, which makes it exceedingly difficult to believe that this was an inventory search conducted to protect the police from liability after the decision was made to impound the car.

Based upon the foregoing facts, we have no trouble determining that this search was conducted for investigative rather than administrative purposes and cannot be justified as a mere inventory search.

### 4. Probable Cause to Search the Car

The government also argued below that the search of the woman's rental car was supported by probable cause and that a search warrant was not necessary to conduct the search because the car presented "exigent circumstances." The district court made no finding of probable cause to search the vehicle, relying instead on the conclusion that the search was made incident to Edwards' arrest.

Under the Fourth Amendment, the police may conduct a warrantless search where they have probable cause to search the area in question and exigent circumstances exist to make the warrant requirement impractical. See Carroll v. United States, 267 U.S. 132 (1925). In the context of vehicle searches, a warrantless search is permissible if there is probable cause to believe that the

vehicle contains contraband.  See California v. Carney, 471 U.S. 386, 392 (1985);

United States v. Crabb, 952 F.2d 1245, 1246 (10th Cir. 1991).  In addition, if

there is probable cause to search a vehicle, the police are allowed to search any

package within the vehicle that is capable of concealing the object of the search.

See Wyoming v. Houghton, 526 U.S. 295, 307 (1999).  Accordingly, despite the

fact that this was not a valid search incident to arrest and not an inventory search,

the search may nevertheless be justified if we find that it was supported by

probable cause.

Although this is a much closer issue, we cannot affirm the district court's

ruling on this alternative ground.  "Probable cause to search a vehicle is

established if, under the 'totality of the circumstances[,]' there is a 'fair

probability' that the car contains contraband or evidence."  United States v.

Nielsen, 9 F.3d 1487, 1489-90 (10th Cir. 1993).  Edwards and the woman were

not arrested in or near the vehicle and, although they were carrying what appeared

to be contraband in the woman's camera bag, there was no testimony presented at

the suppression hearing that would support a belief by the police that additional

contraband or evidence could be found in the vehicle.[10]  Furthermore, by the time

---

[10] There is some suggestion in both parties' briefs to the district court on the suppression issue that one or more witnesses might have observed Edwards trying to place the smoking camera bag into a vehicle in the parking lot of City National Bank.  At the suppression hearing, however, no such witness was called by either party.  There is thus no record of any testimony to this effect at the suppression hearing, and we do not consider what impact such testimony might

(continued...)

the police decided to search the rental car, the police were aware that the City National Bank had not been robbed, making it even less likely that traditional tools of robbery (such as guns or disguises) might be found in the vehicle.  In short, we see no evidence from which the police could have deduced a "fair probability" that a search of the car would reveal contraband or further evidence of criminal activity.

For these reasons, we find that the search of the rental car was not supported by probable cause.  We therefore need not determine whether exigent circumstances existed to justify an immediate search of the vehicle.

## CONCLUSION

For the foregoing reasons, we REVERSE the decision of the district court and find that the evidence seized by the police during the search of the rental car should have been suppressed.  Because we find that the only evidence linking Edwards to the Bank in Boulder robbery was either seized illegally, or uncovered as a direct result of the illegal search, we REVERSE his conviction and REMAND to the district court for further proceedings not inconsistent with this opinion.

---

[10](...continued)
have had on the probable cause determination regarding the search of the rental vehicle.